IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:17-CV-00854-TDS-LPA

| | |
|---|---|
| REBECCA KOVALICH and SUZANNE NAGELSKI, <br><br>Plaintiffs, <br><br>vs. <br><br>PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A., *et al.*, <br><br>Defendants. | **DEFENDANT PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A.'s REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF SUZANNE NAGELSKI'S CLAIMS** |

NOW COMES Defendant Preferred Pain Management & Spine Care, P.A. (hereinafter "PPM") and hereby submits its Reply. For the reasons stated in its original Memorandum of Law in Support of its Motion for Summary Judgment and the arguments set forth below, this Court should grant Defendant PPM's Motion for Summary Judgment and dismiss the claims of Plaintiff Suzanne Nagelski with prejudice.

### I. MISSTATEMENTS OF THE RECORD AND UNAUTHENTICATED EXHIBITS

Nagelski's Response in Opposition [DE # 48] contains several misstatements of the record. Nagelski attempts to use her post-deposition Declaration to assert new facts that contradict her own deposition testimony. "Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Ward v. Family Dollar Stores, Inc.*,

2012 U.S. Dist. LEXIS 115473, at *11-14 n.3 (W.D.N.C. Aug. 16, 2012). For a complete listing of the factual misstatements supported by statements to the Record, *See* Exhibit G.

In addition to failing to accurately represent the facts in the Record, Nagelski has failed to authenticate the Exhibits used to support her arguments in her Response. The Court should not consider Nagelski's unauthenticated Exhibits as "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Rowe v. N.C. Agric. & Tech. State Univ.*, 630 F. Supp. 2d 601, 610 (M.D.N.C. 2009); *Garcia v. United States*, No. 1:11CR253-3, 2015 U.S. Dist. LEXIS 154220, at *7 n.5 (M.D.N.C. Nov. 16, 2015).

## II. ARGUMENT

### A. Abandoned Claims

Nagelski does not respond to PPM's Motion for Summary Judgment as to her claims for wrongful discharge in violation of North Carolina Public Policy or violations of the Employment Retirement Income Security Act ("ERISA"). Nagelski notes she intends to voluntarily dismiss these claims in the event the Court does not grant summary judgment. [DE # 48, p. 21]. Thus, Nagelski has abandoned these claims warranting dismissal. "When a party fails to respond to a summary judgment motion regarding a claim, the party essentially concedes that summary judgment in favor of the moving party is appropriate." *Harris v. hhgregg, Inc.*, 2013 U.S. Dist. LEXIS 45394, at *11-12 (M.D.N.C. Mar. 29, 2013) (citing *Brand v. N.C. Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004); *see also Allen v. Fed. Express Corp.*, 2011 U.S. Dist. LEXIS 34812,

2

at *26 n.5 (M.D.N.C. Mar. 31, 2011) (summary judgment appropriate where plaintiff's response brief contained no argument in response to one of the claims).

PPM relies on its arguments made in its Memorandum in Support that summary judgment should be granted.

B.     <u>Age Discrimination Claim</u>

    1.     <u>Nagelski applies the wrong legal standard; nevertheless, J.M. is not a proper comparator.</u>

Nagelski argues she establishes her *prima facie* case under *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) because (1) she was 49 at the time her position was eliminated; (2) Dr. Spivey was the decision maker for the reorganization; (3) she substantially outperformed alleged comparator J.M.; and (4) through statistical evidence. [DE # 48, pp. 14-15].

Nagelski's reliance on *Stokes* is misplaced. While the Fourth Circuit and North Carolina district courts have applied *Stokes* in evaluating a plaintiff's *prima facie* case, it has only been "in the context of a reduction in force where **performance** is the announced basis for selection." *Stokes*, 206 F.3d 420, 430 (4th Cir. 2000) (emphasis added); *see Mosher v. Wash. Gas Light Co.*, 18 F. App'x 141, 145 (4th Cir. 2001) (unpublished);; *Bishop v. Peppertree Resorts, Ltd.*, 212 F. Supp. 2d 518, 522 (W.D.N.C. 2002); *cf. Mereish v. Walker*, 359 F.3d 330 (4th Cir. 2004) (not acknowledging application of *Stokes* where RIF was based on a position's relevance to changing industry needs).

The elimination of Nagelski's position was not based on performance. At the time of her termination, Nagelski's only job function was as PPM's financial liaison.

Previously, Nagelski's IT duties had been outsourced and full-time on-site HR had been hired. Nagelski tries to create a genuine issue of fact by claiming in her Declaration she "was regularly in the office" and unaware PPM had any issue with her working remotely. [DE # 48, p. 10; DE # 53-12 ¶¶ 7-8]. However, these statements contradict Nagelski's own testimony and undisputed evidence in the record. (Ex. G).

Even if the *Stokes* applies, Nagelski fails to satisfy her burden because J.M. is not a proper comparator. "[T]he validity of [a plaintiff's] prima facie case depends upon whether that comparator is indeed similarly situated." *Dawkins v. SBV, LLC*, 2016 U.S. Dist. LEXIS 24138, at *17 (M.D.N.C. Feb. 26, 2016). Importantly, "[t]he similarity between comparators. . . must be clearly established in order to be meaningful." *Lightner v. City of Wilmington, N.C.,* 545 F.3d 260, 265 (4th Cir. 2008). A true comparator is "similar in **all** relevant respects." *Haywood*, 387 F. App'x, at 359.

Here, Nagelski points to J.M., ***the Spiveys' daughter***, as "the ultimate comparator." [DE # 48, p. 11]. However, J.M. does not have the same position or job duties as Nagelski. J.M. is the Director of Marketing, whereas at the time her position was eliminated, Nagelski serving as a financial liaison. The only similarities between Nagelski and J.M. are that they are family and were supervised by family—Dr. Spivey as the owner of PPM. Nagelski's attempt to use the owner's daughter as "the ultimate comparator" highlights the absurdity of her claim. Nepotism is not a valid basis for a discrimination claim. *See, e.g., Holder v. City of Raleigh*, 867 F.2d 823, 825-26 (4th Cir. 1989).

4

## 2. Nagelski's alleged statistical evidence is inadmissible and irrelevant

Nagelski largely rests her age discrimination case on the statistical evidence of PPM's workforce. While "evidence of an employer's pattern and practice of age discrimination can be relevant to an individual employee's discrimination claim to support an inference of discrimination or pretext, 'statistics alone cannot establish a prima facie case of individual disparate treatment, for all four elements of a prima facie case must be established.'" *Laguerra v. United States Dep't of Treasury*, 2016 U.S. Dist. LEXIS 80180, at *19-20 (D. Md. June 20, 2016) (quoting *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760-61 (4th Cir. 1998), *rev'd on other grounds*, 527 U.S. 1031 (1999)). As this Court has warned, "statistics can be easily manipulated, they must be carefully scrutinized." *Alderman v. Inmar Enters.*, 201 F. Supp. 2d 532, 538 (M.D.N.C. 2002).

Here, Nagelski failed to include a standard deviation or hypothesis testing analysis required by the Fourth Circuit. *Moultrie v. Martin*, 690 F.2d 1078, 1083 (4th Cir. 1982) (requiring method in race discrimination cases); *see also* W. Elec. Co., 713 F.2d at 1018 (4th Cir. 1983) (requiring hypothesis testing in age discrimination cases). "Such analyses would reflect the reliability of the statistical data and are particularly helpful when interpreting data drawn from a small sample, as the precision and dependability of statistics is directly related to the size of the sample being evaluated." *Alderman*, 201 F. Supp. 2d at 538-39. Here, the statistical evidence is "simply too speculative to be probative of anything except that Plaintiff's counsel is proficient at mathematics." *Fisher v. Asheville-Buncombe Tech. Cmty. Coll.*, 857 F. Supp. 465, 470 (W.D.N.C. 1993); *see Albemarle Paper Co. v.*

5

*Moody*, 422 U.S. 405, 433 n. 32, (1975) (statistical evidence not probative where prepared by interested party and not validated by expert statistician). Therefore, the Court should disregard this evidence.

Relying on the unpublished case *Majeed v. Columbus Cty. Bd. Of Educ.*, No. 99-1341, 2000 U.S. App. LEXIS 8621 (4th Cir. May 2, 2000), Nagelski asserts no expert is needed to offer the type of statistical evidence she uses to support her discrimination claim. However, in *Majeed*, the Court noted "the usefulness of statistics depends on the surrounding facts and circumstances." *Id.* at *16. In *Majeed*, it was the employer that "sought to counter allegations of widespread discrimination by demonstrating the higher percentage of African Americans holding the positions for which [plaintiff] applied than contained in the applicant pool." *Id.* at *16-17. The Court found under those specific circumstances, expert testimony was unnecessary.

The facts of this case are similar to *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994). In an ADEA lawsuit brought by two supervisors included in a layoff of fifteen employees, the plaintiffs introduced statistical evidence. The Court disregarded the plaintiffs' data, following the Ninth Circuit's reasoning in *Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986), that held a plaintiff's sample size of thirteen was "too small to have any predictive value" and should be disregarded. *Birkbeck*, 30 F.3d at 511. Here, Nagelski's use of statistical evidence fares no better at undermining PPM's legitimate reasons for eliminating her position, or those of other employees, in order to meet her burden.

6

### 3. <u>Nagelski fails to point to any evidence disproving PPM's reason for eliminating her position</u>

For the same reasons discussed *supra*, J.M. is not a proper comparator. Nagelski thus fails to demonstrate pretext. Second, Nagelski's proffered statistical evidence is not relevant or even suggestive that Nagelski was terminated because of her age. Third, Nagelski offers the testimony of her former co-workers to establish she was a good employee. However, "it is the perception of the decision maker which is relevant", *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996), and the opinions of co-workers are likewise "close to irrelevant." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). The Declarations of former employees "fail to address whether management honestly believed that [Nagelski] was doing a good job." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 434, 444-45 (4th Cir. 1998).

Here, Dr. Spivey eliminated Nagelski's position because it was unnecessary and in the face of the financial pressures, PPM was forced to reduce costs. "In order to show pretext at this third step of the *McDonnell Douglas* framework, [a plaintiff] must proffer sufficient evidence to allow a trier of fact to find that she was replaced, and thus her position was not eliminated." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 648 (4th Cir. 2007). Nagelski has not offered evidence showing she was replaced or that PPM's reasons were false. Instead, it is undisputed Nagelski was hired when she was **46 years old**, just two years older than Yontz at the time she was hired; PPM was paying Nagelski $5,000 a month to merely provide monthly profit and loss statements and compile the bank statements for the

7

accountant to reconcile; PPM's wealth management advisors and accountants found Nagelski's position unnecessary; and PPM was experiencing financial difficulties.

Separately, Nagelski asserts pretext is established because she "can point to 13 other employees over 40" who were part of the reorganization and similarly relies on the same statistical evidence that she does to establish her *prima facie* case. [DE # 48, p. 17]. Nagelski cites *Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990) in support. While the Sixth Circuit found the use of that particular statistical evidence sufficient to create a *prima facie* case, when analyzing whether that same data revealed pretext the court noted:

> [E]ven if the plaintiffs' statistics and the court's assumption tend to indicate that bias could have played a role in some of the decisions . . . By presenting evidence that each plaintiff was less qualified than others occupying comparable positions, the defendants have undercut the importance of the plaintiffs' statistical proof. This method of attacking a statistical prima facie case cannot be rebutted by reference to the statistics already presented since the statistics here do not tend to establish that age played a factor in any particular decision. Unless the plaintiffs can show that the defendants' explanations are inherently suspect or can present other direct or circumstantial evidence suggesting that the proffered reasons are not true, then the defendants are entitled to summary judgment.

*Barnes*, 896 F.2d at 1469.

Here, Nagelski does not discuss each employee's position, duties, location, whether their position was eliminated, or whether their duties were reassigned. Instead, she urges the Court to imply a correlation between an employee's age and their termination without anything more. Nagelski's evidence shows all reorganized employees at least 40 years old were all hired when they were at least 40 years old—belying any inference of age discrimination. (Yontz Decl. Ex. 8). The Fourth Circuit has repeatedly noted the ADEA

8

was "not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges." *Engler v. Harris Corp.*, 628 F. App'x 165, 168 (4th Cir. 2015) (unpublished) (citing *Birkbeck*, 30 F.3d at 513).

Ultimately, PPM has offered a nondiscriminatory reason for eliminating Nagelski's position. Therefore, "it is not [the Court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017). Further, "[t]he very nature of a [reduction in force] is that some workers must be let go, and difficult decisions have to be made." *Duffy v. Belk, Inc.*, 477 F. App'x 91, 96 (4th Cir. 2012) (unpublished).

> In a reduction of work force case, the fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias….The same rule applies to replacement cases as well, where the mere fact of replacement by a younger employee is not dispositive of age discrimination….If it were, it would transform the ADEA into something akin to a strict seniority protection system.

*Birkbeck*, 30 F.3d at 512. Significantly, Nagelski has not presented any evidence to dispute that PPM was under financial pressure or that her financial liaison duties were necessary.

### C. Retaliation Claim

#### 1. Protected Activity

Nagelski states she can easily establish a *prima facie* case of retaliation because she engaged in protected activity when she "complained about Mrs. Spivey's decision to cut the hours of someone returning from leave" in March 2015 and when "she opposed the

9

July 2015 Greensboro terminations." [DE # 48, pp. 19-20]. Regarding these events, Nagelski provides an incorrect timeline of the facts. *See* Ex. G.

"To warrant protection, the employee's perception of a violation must be 'objectively reasonable' under the circumstances known to her." *Strothers v. City of Laurel*, 895 F.3d 317, 328 (4th Cir. 2018). Here, Nagelski claims that allowing the only LPN to have Fridays off would create a "discriminatory environment" and "instigate animosity." [DE # 48, p. 6]. Additionally, Nagelski categorized the July 2015 "decision to terminate M.J. amounted to age discrimination and sexual orientation discrimination." [*Id.* p. 8]. In order for either of these incidents to qualify as protected activity, the court must assess reasonableness by examining the elements of the alleged conduct in light of what Nagelski knew. *See Strothers*, 895 F.3d at 328. Because Nagelski brings a retaliation claim, "she must show that her belief that these elements were satisfied was reasonable." *Id.*

Regarding March 2015, Nagelski has no evidence Mrs. Spivey engaged in discriminatory behavior by allowing an LPN to work four days a week instead of five. (Yontz Decl. Ex. 2). Likewise, Nagelski cannot demonstrate she reasonably believed the elements of age or sexual orientation discrimination were satisfied with regard to the July 2015 termination. The record shows Nagelski was aware of the personnel issues in Greensboro. (Yontz Decl. Ex. 2; S. Spivey Decl. Ex. 1). Instead of assisting, Nagelski suggested the new physician handle the staff. (*Id.*). Nagelski stated "I also don't think GSO issues can easily be solved by changing or involving HR more." (*Id.*). Further, Sherry Spivey explained to Nagelski the reason for M.J.'s termination was to reassign his duties

10

to a CMA instead because a nurse was not necessary. (*Id.*). Moreover, PPM hired M.J. when he was 54 years old, and he was terminated at age 56. (Yontz Decl. Ex. 8). PPM advised Nagelski of the reasons for the terminations, consulted their attorney, and PPM's attorney advised Nagelski directly regarding the terminations. Throughout this process, Nagelski never raised any allegations of discrimination. Instead, she merely stated she had "concerns" and one of the employees was in a protected class.

In light of what Nagelski knew, neither the March 2015 nor the July 2015 incidents show PPM's actions were discriminatory on the basis of age or any other protected characteristic. Therefore, Nagelski did not engage in protected activity because her belief was unreasonable. *See Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 230-31 (4th Cir. 2018) (unpublished) ("But there is no evidence that connects any untoward behavior or comments with any form of racial or gender discrimination, and therefore [plaintiff's] subjective belief that her supervisor was acting with discriminatory intent was not objectively reasonable.")

### 2. PPM already considered reassigning Nagelski's HR duties before March 2015; nevertheless, Nagelski does not show pretext

It is undisputed beginning in November 2014, the Spiveys began discussing having Wendy Yontz take over HR. This was well before Nagelski engaged in any alleged protected activity in March and July of 2015. Further, the fact Nagelski's HR duties were not reassigned until November 2015 and her position was not eliminated until January 2016 destroys the existence of a causal connection. In reality, Nagelski's HR duties were reassigned because PPM needed full-time, on-site HR. Despite the self-serving

11

Case 1:17-cv-00854-TDS-LPA  Document 59  Filed 11/14/18  Page 11 of 15

contradictory statements in her post-deposition Declaration, PPM repeatedly requested Nagelski be on-site more. Likewise, PPM repeatedly asked whether Nagelski would voluntarily give up her HR duties so that a better fit could be put in place.

In her Response, Nagelski points to the "pretext evidence outlined in the ADEA claim" section as her argument that pretext exists with regard to her Title VII retaliation claim. As discussed above, Nagelski cannot establish pretext through proffering irrelevant, misinterpreted statistics, identifying J.M. as the comparator, or the other employee evidence. Ultimately, Nagelski cannot challenge the fact her financial duties were no longer necessary, warranting elimination of her position.

## **CONCLUSION**

For the above-stated reasons, among others, Defendant PPM's Motion for Summary Judgment pursuant to Rule 56 should be GRANTED, and Plaintiff Suzanne Nagelski's claims should be DISMISSED WITH PREJUDICE, and for such other and further relief as the Court deems just and proper.

Respectfully submitted this the 14th day of November, 2018.

                JACKSON LEWIS P.C.

        BY:   */s/ Ann H. Smith*
                ANN H. SMITH
                N. C. State Bar No. 23090
                CAITLIN M. GOFORTH
                N. C. State Bar No. 49227
                *Attorneys for Defendants*
                3737 Glenwood Avenue, Suite 450
                Raleigh, NC 27612
                Telephone: (919) 760-6465

Facsimile: (919) 760-6461
Email: ann.smith@jacksonlewis.com
Email: caitlin.goforth@jacksonlewis.com

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:17-cv-00854-TDS-LPA

| | |
|---|---|
| REBECCA KOVALICH and SUZANNE NAGELSKI, </br></br> Plaintiffs, </br></br> vs. </br></br> PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A., *et al.*, </br></br> Defendants. | **CERTIFICATE OF COMPLIANCE** |

The undersigned counsel hereby certifies compliance with, Local Rule 7.3(d)(1). The undersigned counsel further certifies this Memorandum, including the body of the brief, headings, and footnotes does not exceed 3,125 words.

JACKSON LEWIS P.C.

BY: */s/ Ann H. Smith*
ANN H. SMITH
N. C. State Bar No. 23090
CAITLIN M. GOFORTH
N. C. State Bar No. 49227
*Attorneys for Defendants*
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6465
Facsimile: (919) 760-6461
Email: ann.smith@jacksonlewis.com
Email: caitlin.goforth@jacksonlewis.com

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:17-CV-00854-TDS-LPA

| | |
|---|---|
| REBECCA KOVALICH and<br>SUZANNE NAGELSKI,<br><br>      Plaintiffs,<br><br>vs.<br><br>PREFERRED PAIN MANANGEMENT<br>& SPINE CARE, P.A., *et al.*,<br><br>      Defendants. | **CERTIFICATE OF SERVICE** |

    The undersigned certifies that on November 14, 2018, the foregoing *Defendant Preferred Pain Management & Spine Care, P.A.'s Reply in Support of its Motion for Summary Judgment as to Plaintiff Suzanne Nagelski's Claims* was filed with the Clerk of the Court, using the Court's CM/ECF system, which will send notification of such filing as follows:

Sean F. Herrmann, Esq.
Van Kampen Law P.C.
315 East Worthington Avenue
Charlotte, NC 28203
*Attorneys for Plaintiffs*
sean@vankampenlaw.com

                              */s/ Ann H. Smith*
                              ANN H. SMITH
                              N. C. State Bar No. 23090
                              CAITLIN M. GOFORTH
                              N. C. State Bar No. 49227
                              Jackson Lewis P.C.
                              *Attorneys for Defendants*
                              3737 Glenwood Avenue, Suite 450
                              Raleigh, NC 27612
                              Telephone: (919) 760-6465
                              Facsimile: (919) 760-6461
                              Email: ann.smith@jacksonlewis.com
                              Email: caitlin.goforth@jacksonlewis.com

4837-4886-4377, v. 2