IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:17-CV-00854-TDS-LPA

| | |
|---|---|
| REBECCA KOVALICH and SUZANNE NAGELSKI, <br><br> Plaintiffs, <br><br> vs. <br><br> PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A., *et al.*, <br><br> Defendants. | **DEFENDANT PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A.'s REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF REBECCA KOVALICH'S CLAIMS** |

NOW COMES Defendant Preferred Pain Management & Spine Care, P.A. (hereinafter "PPM") and hereby submits its Reply. For the reasons stated in its original Memorandum of Law in Support of its Motion for Summary Judgment and the arguments set forth below, this Court should grant Defendant PPM's Motion for Summary Judgment and dismiss the claims of Rebecca Kovalich with prejudice.

### I. MISSTATEMENTS OF THE RECORD AND UNAUTHENTICATED EXHIBITS

Kovalich's Response in Opposition [DE # 47] contains several misstatements of the record. Kovalich attempts to use her Declaration to assert new facts that contradict her deposition testimony. "Plaintiff cannot create a dispute about a fact contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for it is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct." *Ward v. Family Dollar Stores, Inc.*, 2012 U.S. Dist.

LEXIS 115473, at *11-14 n.3 (W.D.N.C. Aug. 16, 2012).  For a complete listing of the factual misstatements supported by statements to the Record, *See* Exhibit G.

In addition to failing to accurately represent the facts in the Record, Kovalich has failed to authenticate the Exhibits used to support her arguments in her Response.  The Court should not consider Kovalich's unauthenticated Exhibits as "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment*." Rowe v. N.C. Agric. & Tech. State Univ.*, 630 F. Supp. 2d 601, 610 (M.D.N.C. 2009); *Garcia v. United States*, No. 1:11CR253-3, 2015 U.S. Dist. LEXIS 154220, at *7 n.5 (M.D.N.C. Nov. 16, 2015).

## II.	ARGUMENT

### A.	Abandoned Claims

Kovalich does not respond to PPM's Motion for Summary Judgment as to her claims for wrongful discharge in violation of North Carolina Public Policy or violations of the Employment Retirement Income Security Act ("ERISA").  Kovalich notes she intends to voluntarily dismiss these claims in the event the Court does not grant summary judgment. [DE # 47, p. 21].  Thus, Kovalich has abandoned these claims warranting dismissal.  "When a party fails to respond to a summary judgment motion regarding a claim, the party essentially concedes that summary judgment in favor of the moving party is appropriate." *Harris v. hhgregg, Inc.*, 2013 U.S. Dist. LEXIS 45394, at *11-12 (M.D.N.C. Mar. 29, 2013); *see also Allen v. Fed. Express Corp.*, 2011 U.S. Dist. LEXIS

2

Case 1:17-cv-00854-TDS-LPA   Document 60   Filed 11/14/18   Page 2 of 16

34812, at *26 n.5 (M.D.N.C. Mar. 31, 2011) (summary judgment appropriate where plaintiff's response brief contained no argument in response to one of the claims).

PPM relies on its arguments made in its Memorandum in Support that summary judgment should be granted.

### B. Age Discrimination Claim

#### 1. Kovalich applies the wrong legal standard; nevertheless, J.M. is not a comparator.

Kovalich argues she establishes her *prima facie* case under *Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) because (1) she was 71 at the time her position was eliminated; (2) Dr. Spivey was the decision maker for the reorganization; (3) she substantially outperformed J.M.; and (4) through statistical evidence. [DE # 47, pp. 12-13].

Kovalich's reliance on *Stokes* is misplaced. While the Fourth Circuit and North Carolina district courts have applied *Stokes* in evaluating a plaintiff's *prima facie* case, it has only been "in the context of a reduction in force where **performance** is the announced basis for selection." *Stokes*, 206 F.3d 420, 430 (4th Cir. 2000) (emphasis added); *see Mosher v. Wash. Gas Light Co.*, 18 F. App'x 141, 145 (4th Cir. 2001) (unpublished); *Bishop v. Peppertree Resorts, Ltd.*, 212 F. Supp. 2d 518, 522 (W.D.N.C. 2002); *cf. Mereish v. Walker*, 359 F.3d 330 (4th Cir. 2004) (not acknowledging application of *Stokes* where RIF was based on relevance to industry needs).

The elimination of Kovalich's position was not based on performance. In her role of lab development, Kovalich performed well. However, those duties ceased in 2015, and

3

her position was unnecessary.  Kovalich cannot show her position remained open or was filled by a substantially younger person because it was **never filled**.  Even now, no one is performing her duties. (Hawks Dep. 48:16-49:1).

Kovalich tries to create a genuine issue of fact by claiming in her Declaration at the time of her termination she was (1) "developing age management tests"; (2) "handling laboratory numbers and the budget"; and (3) "approving laboratory invoices." [DE # 47, p. 9; DE # 53-13, ¶¶ 2-4].  However as cited in Exhibit G, these statements contradict Kovalich's testimony.

Even if *Stokes* applies, Kovalich fails to satisfy her burden because J.M. is not a proper comparator.  "[T]he validity of [a plaintiff's] prima facie case depends upon whether that comparator is indeed similarly situated." *Dawkins v. SBV, LLC*, 2016 U.S. Dist. LEXIS 24138, at *17 (M.D.N.C. Feb. 26, 2016).  A true comparator is "similar in **all** relevant respects." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010).

Kovalich points to J.M., ***the Spiveys' daughter***, as "the ultimate comparator." [DE # 47, p. 9].  However, J.M. does not have the same position or job duties as Kovalich.  J.M. is the Director of Marketing, whereas Kovalich developed the lab.  The only similarities between Kovalich and J.M. are that they are family and were supervised by family—Dr. Spivey as the owner of PPM.  Nepotism is not a valid basis for a discrimination claim. *See, Holder v. City of Raleigh*, 867 F.2d 823, 825-26 (4th Cir. 1989).

## 2. **Kovalich's alleged statistical evidence is inadmissible and irrelevant**

Kovalich largely rests her age discrimination claim on statistical evidence of PPM's workforce. While "evidence of an employer's pattern and practice of age discrimination can be relevant to an individual employee's discrimination claim to support an inference of discrimination or pretext, 'statistics alone cannot establish a prima facie case of individual disparate treatment, for all four elements of a prima facie case must be established.'" *Laguerra v. United States Dep't of Treasury*, 2016 U.S. Dist. LEXIS 80180, at \*19-20 (D. Md. June 20, 2016) (quoting *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760-61 (4th Cir. 1998), *rev'd on other grounds*, 527 U.S. 1031 (1999)). As this Court has warned, "statistics can be easily manipulated, they must be carefully scrutinized." *Alderman v. Inmar Enters.*, 201 F. Supp. 2d 532, 538 (M.D.N.C. 2002).

Kovalich failed to include a standard deviation or hypothesis testing analysis required by the Fourth Circuit. *Moultrie v. Martin*, 690 F.2d 1078, 1083 (4th Cir. 1982) (requiring method in race discrimination cases); *see also* W. Elec. Co., 713 F.2d at 1018 (4th Cir. 1983). "Such analyses would reflect the reliability of the statistical data and are particularly helpful when interpreting data drawn from a small sample, as the precision and dependability of statistics is directly related to the size of the sample being evaluated." *Alderman*, 201 F. Supp. 2d at 538-39. Here, the statistical evidence is "simply too speculative to be probative of anything except that Plaintiff's counsel is proficient at mathematics." *Fisher v. Asheville-Buncombe Tech. Cmty. Coll.*, 857 F. Supp. 465, 470 (W.D.N.C. 1993); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 433 n. 32, (1975)

5

(statistical evidence not probative where prepared by interested party and not validated by expert statistician). Therefore, the Court should disregard this evidence.

Relying on the unpublished case, *Majeed v. Columbus Cty. Bd. of Educ.*, 2000 U.S. App. LEXIS 8621 (4th Cir. May 2, 2000), Kovalich asserts no expert is needed to offer the statistical evidence she uses to support her discrimination claim. However, the *Majeed* Court noted "the usefulness of statistics depends on the surrounding facts and circumstances." *Id.* at *16. In *Majeed*, it was the employer that "sought to counter allegations of widespread discrimination by demonstrating the higher percentage of African Americans holding the positions for which [plaintiff] applied than contained in the applicant pool." *Id.* at *16-17. The Court found under those specific circumstances, expert testimony was unnecessary.

The facts of this case are similar to *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994). In an ADEA lawsuit brought by two supervisors included in a layoff of fifteen employees, the plaintiffs introduced statistical evidence. The Court disregarded the plaintiffs' data, following the Ninth Circuit's reasoning in *Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986), which held a plaintiff's sample size of thirteen was "too small to have any predictive value" and should be disregarded. *Birkbeck*, 30 F.3d at 511. Here, Kovalich's use of statistical evidence fares no better at undermining PPM's legitimate reasons for eliminating her position, or those of other employees, in order to meet her burden.

6

### 3. Kovalich fails to point to any evidence disproving PPM's reason for eliminating her position

For the same reasons discussed *supra*, J.M. is not a proper comparator. Kovalich thus fails to demonstrate pretext. Second, Kovalich's proffered statistical evidence is not relevant or even suggestive that Kovalich was terminated because of her age. Third, Kovalich offers the testimony of her former co-workers to establish she was a good employee. However, "it is the perception of the decision maker which is relevant", *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996), and the opinions of co-workers are "close to irrelevant." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998). The Declarations of former employees "fail to address whether management honestly believed that [Kovalich] was doing a good job." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 434, 444-45 (4th Cir. 1998). Fourth, while Kovalich tries to flag as significant the disparity between Hawks' and Dr. Spivey's recollection of events, whether a conversation regarding Kovalich's job duties actually took place is not material. "Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanations' validity, or by raising points that are wholly irrelevant to it." *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006).

Here, Dr. Spivey eliminated Kovalich's position because it was unnecessary and in the face of financial pressure, PPM had to reduce costs. "In order to show pretext at this third step of the *McDonnell Douglas* framework, [a plaintiff] must proffer sufficient

7

evidence to allow a trier of fact to find that she was replaced, and thus her position was not eliminated." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 648 (4th Cir. 2007). Kovalich has not offered evidence showing these reasons were false. It is undisputed PPM hired Kovalich at **69 years old**, five years older than the Spiveys are now, and at the time of her termination, the lab staff did not need her oversight, lab profitability had declined, her lab development duties had ceased, she was only working a few hours a week, and PPM was experiencing financial difficulties.

Separately, Kovalich asserts pretext is established by (1) the thirteen other employees over forty who were part of the reorganization; and (2) statistical evidence. Kovalich cites *Barnes v. GenCorp Inc.*, 896 F.2d 1457 (6th Cir. 1990) in support. While the court found the use of that particular statistical evidence sufficient to create a *prima facie* case, when analyzing whether that same data supported pretext the court noted:

> [E]ven if the plaintiffs' statistics and the court's assumption tend to indicate that bias could have played a role in some of the decisions . . . By presenting evidence that each plaintiff was less qualified than others occupying comparable positions, the defendants have undercut the importance of the plaintiffs' statistical proof. This method of attacking a statistical prima facie case cannot be rebutted by reference to the statistics already presented since the statistics here do not tend to establish that age played a factor in any particular decision. Unless the plaintiffs can show that the defendants' explanations are inherently suspect or can present other direct or circumstantial evidence suggesting that the proffered reasons are not true, then the defendants are entitled to summary judgment.

*Barnes*, 896 F.2d at 1469.

Here, Kovalich does not discuss each employee's duties and whether they were eliminated or reassigned. Instead, she urges the Court to imply a correlation between an

8

employee's age and their termination without anything more. Kovalich's evidence shows all reorganized employees at least 40 years old were all hired when they were at least 40 years old—belying any inference of age discrimination. (Yontz Decl. Ex. 8). The Fourth Circuit has repeatedly noted the ADEA should not "obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges." *Engler v. Harris Corp.*, 628 F. App'x 165, 168 (4th Cir. 2015) (unpublished).

Ultimately, PPM has offered nondiscriminatory reasons for eliminating Kovalich's position. Therefore, "it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017). Further, "[t]he very nature of a [RIF] is that some workers must be let go, and difficult decisions have to be made." *Duffy v. Belk, Inc.*, 477 F. App'x 91, 96 (4th Cir. 2012) (unpublished). Kovalich has not presented evidence disputing PPM was under financial pressure. Indeed, Kovalich conceded PPM was looking for ways to cut costs due to decreasing insurance reimbursement rates. (Kovalich Dep. 171:6-172:11, 250:2-21; S. Spivey Dep. Ex. 74). Kovalich herself *admitted*, "Dr. Spivey had to get rid of me – ***maybe for financial reasons. I mean, that's possible***." (Kovalich Dep. 242:24-243:1).

C. **Retaliation Claims**

   1. **Kovalich's relationship with Dr. Spivey was "just fun"**

Kovalich now claims in her Declaration Dr. Spivey kept "testing" her to see how far he could go, and she kept rejecting him. These allegations are a far departure from

9

Kovalich's deposition testimony. Kovalich testified when Dr. Spivey hugged her, she was concerned with "somebody walking out the door and misinterpreting" the situation even though it was "just fun". (Kovalich Dep. 259: 5-18). When Dr. Spivey allegedly kissed Kovalich, her focus was on the "highly active hall." (*Id.* 207:17-25). She was waiting for "somebody to come down the hall" and see them. (*Id.*). Afterwards, Kovalich only said, "I think I better go." (*Id.* 208:1-2). Aside from conclusory contradictory statements in her Declaration, Kovalich puts forth no evidence showing unwelcomeness.

Kovalich tries to establish a causal connection by now claiming Dr. Spivey treated her "differently" and was "very distant" between the kiss and her termination. [DE # 53-13, ¶ 8]. These vague allegations cannot save Kovalich's claim. Despite being deposed for several hours with no mention of a change in Dr. Spivey's behavior towards her between October 2015 until June 2016, Kovalich now asserts that Dr. Spivey "was colder" towards her. Even still, Kovalich provides an ambiguous statement not attached to any concrete facts and not supported by any evidence in the record. *See Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) ("conclusory statements, without evidentiary support," are insufficient to create a genuine issue of fact). Kovalich cannot show a causal connection.

### 2. **Third-Party Retaliation**

Kovalich claims the causal connection evidence is strong. It is undisputed Kovalich complied with Dr. Spivey's alleged request to contact Nagelski about not suing the Company. There was only one discussion between Dr. Spivey and Kovalich about the matter in March of 2016. By this point, Dr. Spivey had considered eliminating Kovalich's

10

position, the reorganization was underway, and Mary Benton was evaluating the need for each position. Moreover, PPM did not receive notice of Nagelski's EEOC Charge until June 6, 2016, which was days ***after*** PPM decided to eliminate Kovalich's position and three months after Kovalich's conversation with Dr. Spivey. Kovalich fails to show a causal connection.

Even if Kovalich could show a causal connection, for the reasons argued herein, Kovalich fails to overcome PPM's non-retaliatory reason for eliminating her position. As with Kovalich's other claims, Kovalich fails to create a genuine issue of material fact that PPM's reasons for eliminating her position were not financially motivated.

D. **Sexual Harassment.**

Kovalich argues her sexual harassment claim is timely, citing *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 223-234 (4th Cir. 2016). [DE # 47, pp. 17-18]. *Guessous* is distinguishable because the termination decision was made around the time the plaintiff confronted the decision maker. 828 F.3d at 215, 223 (noting that "because the work assignments were withdrawn in November 2012, and the termination occurred in March 2013, both constitute facts within the statutory period which contributed to the hostile work environment and make that claim timely.").

Kovalich claims her termination revives her time-barred sexual harassment claim because "between the kiss and [Dr. Spivey's] desire to fire Rebecca, he had Benton look into it and decided to carry it out." [DE # 47, p. 19]. However, Dr. Spivey and Benton both testified it was Benton who approached Dr. Spivey about eliminating Kovalich's position.

11

(Dr. Spivey Dep. 224:7-225:4; Benton Dep. 119:1-25). Further, Dr. Spivey first considered eliminating Kovalich's position around the time the three Greensboro employees were terminated because lab development had concluded. (Dr. Spivey Dep. 217:10-225:21). There was nothing between the alleged kiss and the termination supporting the hostile work environment claim. This claim is untimely.

With regards to whether the alleged conduct was unwelcome, Kovalich sidesteps addressing her own actions related to her relationship with Dr. Spivey. Kovalich cannot point to her Declaration stating she felt "uncomfortable." In reality, Kovalich voluntarily exchanged flirtatious text messages with Dr. Spivey as "just little play back and forth." (Kovalich Dep. 246:18). Similarly, the February 2015 hug was "just fun." (*Id*. 259:16). Thus, Kovalich cannot show unwelcomeness.

Further, Kovalich cannot show her work environment was both objectively and subjectively abusive. *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008). "[I]nappropriate behavior, without more, is insufficient to rise to the level necessary to demonstrate a hostile work environment sexual harassment claim. *Atkins v. Burwell*, 2016 U.S. Dist. LEXIS 109895, at *23-24 (D. Md. Aug. 17, 2016). The Fourth Circuit has observed, the line between a viable and infirm Title VII hostile work environment claim is "those situations that indeed present serious impediments to minority and female workers and those situations when human nature simply is not at its best." *Ziskie*, 547 F.3d at 229. Here, the alleged conduct does not rise to the level of being severe or pervasive, and Kovalich has not shown otherwise.

## CONCLUSION

For the above-stated reasons, among others, Defendant PPM's Motion for Summary Judgment pursuant to Rule 56 should be GRANTED, and Plaintiff Rebecca Kovalich's claims should be DISMISSED WITH PREJUDICE, and for such other and further relief as the Court deems just and proper.

Respectfully submitted this the 14th day of November, 2018.

JACKSON LEWIS P.C.

BY: */s/ Ann H. Smith*
ANN H. SMITH
N. C. State Bar No. 23090
CAITLIN M. GOFORTH
N. C. State Bar No. 49227
*Attorneys for Defendants*
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6465
Facsimile: (919) 760-6461
Email: ann.smith@jacksonlewis.com
Email: caitlin.goforth@jacksonlewis.com

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:17-cv-00854-TDS-LPA

| | | |
|---|---|---|
| REBECCA KOVALICH and SUZANNE NAGELSKI, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **CERTIFICATE OF COMPLIANCE** |
| PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

The undersigned counsel hereby certifies compliance with, Local Rule 7.3(d)(1). The undersigned counsel further certifies this Memorandum, including the body of the brief, headings, and footnotes does not exceed 3,125 words.

JACKSON LEWIS P.C.

BY: */s/ Ann H. Smith*
ANN H. SMITH
N.C. State Bar No. 23090
CAITLIN M. GOFORTH
N.C. State Bar No. 49227
*Attorneys for Defendants*
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6465
Facsimile: (919) 760-6461
Email: ann.smith@jacksonlewis.com
Email: caitlin.goforth@jacksonlewis.com

14

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 1:17-CV-00854-TDS-LPA

| | |
|---|---|
| REBECCA KOVALICH and SUZANNE NAGELSKI, <br><br> Plaintiffs, <br><br> vs. <br><br> PREFERRED PAIN MANANGEMENT & SPINE CARE, P.A., *et al.*, <br><br> Defendants. | **CERTIFICATE OF SERVICE** |

The undersigned certifies that on November 14, 2018, the foregoing *Defendant Preferred Pain Management & Spine Care, P.A.'s Reply in Support of its Motion for Summary Judgment as to Plaintiff Rebecca Kovalich's Claims* was filed with the Clerk of the Court, using the Court's CM/ECF system, which will send notification of such filing as follows:

Sean F. Herrmann, Esq.
Van Kampen Law P.C.
315 East Worthington Avenue
Charlotte, NC 28203
*Attorney for Plaintiffs*
sean@vankampenlaw.com

*/s/ Ann H. Smith*
ANN H. SMITH
N. C. State Bar No. 23090
CAITLIN M. GOFORTH
N. C. State Bar No. 49227
Jackson Lewis P.C.
*Attorneys for Defendants*
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612
Telephone: (919) 760-6465
Facsimile: (919) 760-6461
Email: ann.smith@jacksonlewis.com
Email: caitlin.goforth@jacksonlewis.com

15

4830-0929-0617, v. 2