IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-00854-TDS-LPA

REBECCA KOVALICH and SUZANNE NAGELSKI, )
)
)
Plaintiffs, )
v. )
)
PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A., DR. DAVID SPIVEY, individually, and SHERRY SPIVEY, individually. )
)
)
)
)
Defendants. )

**<u>Exhibit 6</u>**

---

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO. 1:17-cv-00854-TDS-LPA

REBECCA KOVALICH and SUZANNE NAGELSKI, )
)
Plaintiffs, )
)
vs. )
)
PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A., DR. DAVID SPIVEY, individually, and SHERRY SPIVEY, individually, )
)
Defendants. )
)

30(b)(6) DEPOSITION

OF

**PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A.**

By and Through Its Representative

**WENDY YONTZ**

VOLUME I

At Winston-Salem, North Carolina

Tuesday, August 28, 2018

REPORTER: ELAINE F. HAYES
Notary Public

**REED & ASSOCIATES**
2401 Whirlaway Court
Matthews, NC 28105
980-339-3575

Case 1:17-cv-00854-TDS-LPA Document 53-6 Filed 10/31/18 Page 2 of 17

A. 5/29/2012.
Q. Anyone else?

Q. Okay. Let's start with kind of the most recent group and work our way backwards.
Well, is there anyone else in that category?
A. No.
Q. So we've talked about, so far, between the list in Exhibit 28 and then the additional people you've given me, all of the individuals that would count as terminations for topic 1, correct?
A. Correct.

Case 1:17-cv-00854-TDS-LPA Document 53-6 Filed 10/31/18 Page 3 of 17

[Page content redacted]

**REED & ASSOCIATES**
980-339-3575

1        MR. HERRMANN:  Yeah, Exhibit 28, first page.
2  ███████████████████████████████████████████████████████
3  ███████████████████████████████████████████████████████
4  Q.   When we're saying "the reorganization," are we
5       talking about one reorganization, or were there more
6       reorganizations with the company?
7  A.   During my time, it's been ongoing.
8  Q.   And did that predate you as well?
9  A.   Yes.
10 ███████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████
13 ███████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████████
15 ███████████████████████████████████████████████████████
16 ███████████████████████████████████████████████████████
17 ███████████████████████████████████████████████████████
18 ███████████████████████████████████████████████████████
19 ███████████████████████████████████████████████████████
20 ███████████████████████████████████████████████████████
21 ███████████████████████████████████████████████████████
22 ███████████████████████████████████████████████████████
23 ███████████████████████████████████████████████████████
24 ███████████████████████████████████████████████████████
25 ███████████████████████████████████████████████████████

consulted.
Q. And why was she selected?
A. There was not enough of the procedures that she precerted to justify a full-time position.
[redacted]
A. Yes.
Q. Who were the decision-makers?
A. Myself, Dr. Spivey, Sherry Spivey, and Mary Benton was consulted.
Q. And why was she selected?
A. The position did not require a full-time position.
Q. And what were some of the specifics with her?
A. Making the patient reminder calls.
[redacted]
A. No.
Q. Who were the decision-makers?
A. Myself and Dr. Spivey.
Q. Why was she terminated?
A. She had multiple complaints and performance issues.
[redacted]
A. Yes.
Q. Who were the decision-makers?
A. Brandi Frey, myself, and Dr. Spivey.
Q. And why was she selected?

Case 1:17-cv-00854-TDS-LPA Document 53-6 Filed 10/31/18 Page 6 of 17

A. There wasn't enough in her job description to fulfill a full-time position.
Q. What was her job description?
A. She did precertifications.
Q. Was that all she did?
A. Yes.
[redacted]
A. Yes.
Q. Who were the decision-makers?
A. Brandi Frey, myself, Dr. Spivey, and Mary Benton was consulted.
Q. And why was she selected?
A. There wasn't enough to fulfill a full-time position.
[redacted]
A. Yes.
Q. And who were the decision-makers?
A. Dr. Spivey, Sherry Spivey, myself, and Mary Benton was consulted.
Q. What input did Mrs. Spivey have?
A. She was really there just to be made aware that this was going to occur.
[redacted]
A. We eliminated the position.

Q. What was she doing at the time of her termination?
A. She was IT and HIPAA.
Q. Was that all she was doing?
A. At the time of termination, yes.
Q. And IT and HIPAA, were those roles completely eliminated at the time of her termination?
A. The IT, we have a company that handles our computers. The HIPAA, I share that responsibility with another employee we're training.
Q. Who's the other employee that you share that with?
A. Maureen O'Sullivan.
Q. How long has Ms. O'Sullivan done that job?
A. I'll have to look at her file.
Q. That's fine.
MS. SMITH: Do you want her to do that now?
MR. HERRMANN: No.
MS. SMITH: Okay.
Q. Suzanne Nagelski, was her termination part of the reorg?
A. Yes.
Q. And who were the decision-makers?
A. Dr. Spivey, Sherry Spivey, and Mary Benton was consulted.
Q. And why was Ms. Nagelski chosen as part of the reorganization?

1  A.   Like I stated a moment ago, the IT part was
2       outsourced, and then the HR was needed in-house.
3  Q.   Wendy Yontz took over Suzanne Nagelski's HR duties in
4       November of 2015, correct?
5  A.   Correct.
6  Q.   Was Rebecca Kovalich's termination part of the reorg?
7  A.   Yes.
8  Q.   Who were the decision-makers?
9  A.   Dr. Spivey, and he consulted with Mary Benton.
10 Q.   And why was Ms. Kovalich selected?
11 A.   That position was eliminated.
12 Q.   Did anyone else have input into the decision to
13      eliminate that position?
14 A.   No.
15 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
16 A.   Yes.
17 Q.   Who were the decision-makers?
18 A.   Dr. Spivey, Sherry Spivey, and Meg Shipley, attorney,
19      was present.
20 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
21 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
22 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
23 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
24 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
25 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

[redacted]
A. Correct.
Q. Did anyone do the duties that he did prior to his termination?
A. I would need to review his file.
Q. Okay. We'll do that later.
[redacted]
A. Yes.
Q. Who were the decision-makers?
A. Dr. Spivey, and he consulted with Mary Benton.
Q. And why was he selected?
A. Dr. Spivey decided to not pursue the RegenerAge any further.
Q. What's RegenerAge?
A. Age management.
Q. When did Dr. Spivey begin pursuing -- well, let me ask that a different way. [redacted] hired by Preferred Pain Management?
A. September 1st of 2013.
Q. When did Dr. Spivey start pursuing RegenerAge?
A. Since my employment he's been discussing RegenerAge, and [redacted] has been taking classes. I am not sure when he initially started.

Q. Do you know, was [redacted] hired specifically for the RegenerAge?
A. That, I am not aware of.
Q. Did [redacted] have other duties at PPM aside from RegenerAge work?
A. He worked in the clinic.
Q. About how much of his time at PPM was focused on RegenerAge at the time of his termination?
A. He worked on RegenerAge between patients, during his lunch, and his off hours.
Q. Would the majority of his time be spent with patients in the clinic?
A. Yes.
[redacted]
A. Yes.
Q. Who were the decision-makers?
A. Dr. Spivey, Sherry Spivey, and Attorney Meg Shipley was present.
[redacted]
Q. All right. Did PPM discuss with her getting either

Case 1:17-cv-00854-TDS-LPA Document 53-6 Filed 10/31/18 Page 11 of 17

name, birth date, and hire date?

A. (Witness reviews document.) Yes.

Q. So I think maybe the easiest way to go about it would be page by page, so if you'll go back to 5304. And rather than ask you every single one, what I'm going to have you do is look through this page on 5304 with [redacted] being the first name, who we've discussed -- he's not there -- and [redacted] being the last, and let me know if any of these individuals have retired from PPM.

A. (Witness reviews document.) No.

Q. Have any of those individuals resigned?

A. Yes.

Q. Starting with the top and going down -- again, I know the first few were terminated. We've already talked about the terminations. That's noted. Going alphabetical down the page, who is the first one that you see that has resigned?

[redacted]

Q. Who is the next employee going down this list who has resigned?

Case 1:17-cv-00854-TDS-LPA Document 53-6 Filed 10/31/18 Page 12 of 17

[Page content redacted]

Q. Who's next?

A. That would be all.

Q. Were all those resignations voluntary?

A. Yes.

[redacted]

Q. Let's go ahead and go on to Defendants 5306. Going from top to bottom on this page, identify the first person, if there are any, who has retired.

A. (Witness reviews document.) There are not any.

Q. Can you identify, again going from top to bottom on 5306, the first who has resigned?

[redacted]

A. Oh, I'm sorry. I'm on the wrong sheet.

Q. That's okay.

A. Okay. Are we about done? (Laughter.)

[redacted]

[Page content redacted]

A. Yes.
Q. Were all these resignations voluntary?
A. Yes.
Q. Let's go to 5308, the last page of this. Starting at the top and going down, who on this list has retired?
A. No one.
Q. And identify from the top of 5308, starting with [redacted] and going down, who has resigned.

Case 1:17-cv-00854-TDS-LPA Document 53-6 Filed 10/31/18 Page 16 of 17

Q. Did she work in the Greensboro office?
A. Yes.
Q. Who were the decision-makers in her termination?
A. Dr. Spivey, Sherry Spivey, and Meg Shipley was present.
Q. Why was she selected for the reorganization?

MS. SMITH: And I would say that line of questioning is beyond the scope of the 30(b)(6).

MR. HERRMANN: Sure. Since they're alleging

Case 1:17-cv-00854-TDS-LPA Document 53-6 Filed 10/31/18 Page 17 of 17