IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:17-cv-00854-TDS-LPA

| | |
|---|---|
| REBECCA KOVALICH and SUZANNE NAGELSKI, | ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) |
| PREFERRED PAIN MANAGEMENT & SPINE CARE, P.A., DR. DAVID SPIVEY, individually, and SHERRY SPIVEY, individually. | ) ) ) ) ) |
| Defendants. | ) |

**Exhibit 11**

# DECLARATION OF CINDY INGOLD

**North Carolina**

**County of Davidson**

**I, <u>Cindy Ingold</u>, declare that:**

1. I am an adult resident of Davidson County, North Carolina and a former employee of Preferred Pain Management & Spine Care, P.A. ("PPM").

2. PPM hired me in or around April 2015 as a temporary Front Desk Administrator at its Winston-Salem location. On or around August 10, 2015, PPM brought me on as a full-time Front Desk Administrator.

3. I reported to Betty Webb, who was the front desk and medical records supervisor.

4. In 2015, Ms. Webb told me that I was being transferred to the Greensboro office. I went to Greensboro and worked a couple of weeks and learned how that office did things. Then, PPM dismissed all of the front office workers on a Friday except for me and one or two of the CMAs.

5. At first, I did the same job in Greensboro as in Winston, and I continued reporting to Ms. Webb.

6. In or around late winter 2016, my job duties suddenly changed. Previously, I mainly did patient check-out. Then, I did check-in and insurance and co-pay verification. These two roles were quite different. Yet, PPM gave me almost no training on the new insurance part of my job, which was significant. I also had a new supervisor in this new role—Brandi Frey.

7. It was extremely common for employee roles to change at PPM. Aside from what happened from me and what I observed happen with my coworkers, there were regular emails and mes-

KN 1889

Case 1:17-cv-00854-TDS-LPA   Document 73-11   Filed 12/11/18   Page 2 of 4

sages saying that certain employees were now doing something else or that someone is gone, and someone else is taking over the role, and so-forth.

8. Out of the blue, on or around March 2, 2016, I was presented with a counseling, but I refused to sign it. There was no basis for the items in the counseling, and I strongly disagreed with it. What's more, I was never trained on many of items listed.

9. On or around June 15, 2016, Wendy Yontz in HR came to the office and fired me. Between the March 2, 2016, counseling and my termination, I received no additional counseling or coaching (written or verbal). I was totally blind-sided. Yontz told me that I was fired for patient complaints and complaints from coworkers, but I was never presented with or told about those complaints. I asked Yontz to show them to me, and she refused.

10. In fact, I finally received training on the insurance part of my job (which I started doing many months earlier) only around two weeks before my termination. And on or around June 10, 2016, Yontz was in the office—I believe to fire someone else—and she told me that I was doing a good job.

11. About a month before my termination, PPM brought in a roughly twenty-five-year-old employee as the office manager at the Greensboro office. Her name was ▇▇▇▇▇▇ She also worked in medical records. She knew nothing about how the office ran and she had to be thoroughly trained on medical records. She was freshly out of college, as I recall. My recollection is that Yontz met her at a bar and that's how she got the job.

12. ▇▇▇▇ assumed ▇▇▇▇ old role. ▇▇▇▇ was roughly my age at the time of her termination. PPM moved her from medical records in Winston-Salem to medical records in Greensboro and then got rid of her.

13. It was obvious that PPM was shuffling roles and duties to eliminate older employees to replace them with younger workers.

14. Suzanne Nagelski was terrific to work with when she was in Human Resources. She understood employees and tried to make sure everyone was treated fairly. I truly felt like she had both the employees' and the company's best interests in mind, and she took her role seriously. She was incredibly accessible and available, and I never had an issue reaching her.

15. The statements made in this declaration are true and correct.

16. I make this statement based solely upon my own personal knowledge.

17. I make this statement by my own free will and volition without promise of any benefit for doing so and without threat of any penalty or consequence for not doing so.

18. I declare under penalty of perjury under the laws of the United States of America and the State of North Carolina that the foregoing is true and correct.

19. This declaration is made pursuant to 28 U.S.C. § 1746.

This the __30__ day of August, 2018.

_____
Cindy Ingold