# DECLARATION OF SUZANNE NAGELSKI

**North Carolina**

**County of Mecklenburg**

**I, <u>Suzanne Nagelski</u>, declare that:**

1. I am over the age of 18 and suffer from no legal disabilities. The information contained in this affidavit is based upon personal knowledge.

2. From the time I began working for PPM in late 2006 or early 2007, until the day I was fired, I only worked for PPM. Because I solely worked for PPM, and had done so for years, my switch to PPM's payroll in 2013 reflected the true nature of my employment status with PPM that had been in existence already.

3. 2014 and 2015 were banner years for PPM in terms of financial success. Just prior to the onset of the alleged reorganization, I initiated a Cash Balance Program to help the Spiveys put away more money for retirement. I also increased the safe harbor non-elective employer contribution to employees from three percent to four for the 2013 and 2014 fiscal years, helped PPM purchase its second Greensboro location, purchased a company vehicle, and approved regular shareholder distributions to Dr. Spivey's personal wealth management account.

4. I otherwise know that 2014 and 2015 were highly successful financial years for PPM because I was privy to that information as part of my job while I worked for PPM. I handled all of PPM's back-end financial projections and was responsible for tax mitigation.

5. In fact, the first time I heard about an alleged reorganization was in relation to this case. I had never heard about the alleged reorganization while I was employed by PPM.

6. Even though I was PPM's sole HR employee when the reorganization allegedly began in early 2015, I knew nothing about it and was certainly not consulted by anyone about it.

7. In PPM's Memorandum and in PPM's position statement to the EEOC, PPM makes certain allegations about my job performance. While I deny those allegations vehemently, it's also important to note that I was never coached on any of them before I was fired.

8. On a related note, PPM's assertion that it wanted me to be at the office more often but I refused is just not true. First, I spent a considerable amount of time at the office. I was physically present in the office two days a week, and that does not include meetings which were held outside the office. Second, I was always available and reachable. I did my job, and I did it well, regardless of where I was. Third, no one at PPM told me that I needed to be at the office more often at any time before PPM decided to hire Wendy Yontz. Dr. Spivey specifically approved of my ability to work from my home office. PPM's position that it replaced me with Yontz because I refused to be at the office is not true.

9. ▮▮▮▮▮▮ was PPM's Director of Marketing during my time with PPM, and I believe she still is today. During my time with PPM, I never observed her complete any work. To be fair, I know that she wanted to complete brochures for PPM, but I never saw the final product, or any product, for that matter, from ▮▮▮▮▮▮.

10. Laura Schumacher at Vermillion handled all of PPM's marketing. Vermillion also handled website set-up, monitoring, and updates. I'm not aware of ▮▮▮▮▮▮ helping with any of that work.

11. When I opposed the July 2015 Greensboro terminations, I wasn't just going through the motions. I had a good faith belief that the termination of the over 50-year-old male employee

Case 1:17-cv-00864-TDS-LPA   Document 53-12   Filed 10/31/18   Page 2 of 3

Ex. 12

constituted age discrimination in violation of federal law. I also thought it violated the law because of his sexual orientation. My good faith belief was strengthened when I learned that the employees were being replaced.

12. Moreover, in March and June 2015, when Sherry Spivey was trying to move a returning employee to part-time, I had a good faith belief that what she wanted to do violated the ADA and/or wage and hour laws.

13. When I said that these decisions were opening PPM up to exposure, this is what I was talking about.

14. The statements made in this affidavit are true and correct.

15. I make this statement based solely upon my own personal knowledge.

16. I make this statement by my own free will and volition without promise of any benefit for doing so and without threat of any penalty or consequence for not doing so.

17. I declare under penalty of perjury under the laws of the United States of America and the State of North Carolina that the foregoing is true and correct.

18. This declaration is made pursuant to 28 U.S.C. § 1746.

This the 31 day of October, 2018.

_____
Suzanne Nagelski